## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**ROBERT M. SMITH**                                                        **PLAINTIFF**

**V.**                                   **NO. 3:23-CV-00212-JTK**

**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

### ORDER

## I.  Introduction:

Plaintiff, Robert M. Smith ("Smith"), applied for Title XVI supplemental security income on June 8, 2021, alleging a disability onset date of March 17, 2020. (Tr. at 19). The application was denied initially and upon reconsideration. *Id.* After conducting a hearing, an Administrative Law Judge ("ALJ") denied Smith's application in a written decision dated January 24, 2023. (Tr. at 19-28). The Appeals Council declined to review the ALJ's decision. (Tr. at 1-5). The ALJ's decision now stands as the final decision of the Commissioner, and Smith has requested judicial review.

For the reasons stated below, the Court [1] affirms the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.  <u>The Commissioner's Decision</u>:

The ALJ found that Smith had not engaged in substantial gainful activity since the application date of June 8, 2021.[2] *Id*. The ALJ found, at Step Two, that Smith had the following severe impairments: knee degenerative changes and generalized osteoarthritis.[3] (Tr. at 21-23).

After finding that Smith's impairments did not meet or equal a Listing (Tr. at 23),[4] the ALJ determined that Smith had the residual functional capacity ("RFC") to perform work at the light exertional level, except that he can not more than occasionally clim, balance, stoop, kneel, crouch, and crawl. Id.

At Step Four, the ALJ determined that Smith is ubable to perform any of his past relevant work. (Tr. at 27). Utilizing the testimony of a Vocational Expert ("VE"), the ALJ next determined that, based on Smith's age, education, work experience, and RFC, he was able to perform a number of jobs in the national

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[3] The ALJ thoroughly discussed Smith's other non-severe impairments at Step Two, including anxiety and depression. Id.

[4] 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.

economy. *Id*. Therefore, the ALJ concluded that Smith was not disabled. *Id*.

## III. Discussion:

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co.*

3

*v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

   B. Smith's Arguments on Appeal

Smith contends that the evidence supporting the ALJ's decision is less than substantial. He argues that: (1) the ALJ erred in finding that Smith's depression and anxiety were not severe impairments at Step Two; (2) the ALJ erred in his consideration of medical opinion evidence; and (3) the RFC did not incorporate all of Smith's limitations.

Smith suffered from anxiety and depression, and he required an inpatient behavioral unit stay after a suicide attempt. (Tr. at 46-48). But he admitted that he had been using marijuana before that. (Tr. at 22, 607-23). Still, Smith alleges that anxiety and depression should have been classified as severe impairments at Step Two.[5]

Smith said that his symptoms were worse when he was drinking and using

---

[5] The claimant has the burden of proving that an impairment is severe at Step Two, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); see *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). A physical or mental impairment must last or be expected to last not less than 12 months. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

drugs; they improved when he was taking his psychiatric prescriptions as prescribed, which he did not always do.[6] (Tr. at 607-623, 645-659). Smith treated his mental impairments conservatively with his PCP, rather than attending regular counseling appointments.[7] (Tr. at 22, 442, 445, 452-455, 473-481, 569-576). He only went to a specialized psychiatric provider one time during the relevant time-period. *Id*. Mental status examinations were generally normal, with a negative depression screening in 2022. *Id*. Moreover, Smith admitted that triggers for his anxiety were situational in nature, related to family and living situations.[8] (Tr. at 48-57, 367-376). Smith also admitted that he lost his last job due to the COVID shutdown, rather than any medical issue. (Tr. at 26). The ALJ thoroughly discussed Smith's anxiety and depression throughout the opinion, showing that he gave mental impairments proper consideration. The ALJ did not err at Step Two.

Smith's PCP, Dr. Jeremiah Nugent, M.D., saw him during the relevant time-period for knee and back pain. (Tr. at 25-28, 442-481, 486-488). Treatment was

---

[6] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[7] The failure to seek regular and continuing treatment contradicts allegations of disability. See *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

[8] Situational stressors do not suggest an entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

conservative, and steroid injections helped to relieve Smith's pain. (Tr. at 421-454).
Dr. Nugent submitted a medical source statement in February 2022, which suggested
that Smith could not even perform sedentary work, due to his chronic knee pain and
back pain.[9] (Tr. at 486-488). The ALJ found this opinion to be unpersuasive, noting
that clinical examinations were grossly normal, and that Smith stopped working his
past medium exertional level job due to COVID, not for health reasons. (Tr. at 26).
On the other hand, the ALJ found the state-agency medical expert opinions that
Smith could perform light work to be more persuasive, and they were indeed
supported by the benign medical record. (Tr. at 26, 74-89). The ALJ did not err in
his treatment of the medical opinions.

Smith's contention that the RFC did not fully incorporate his limitations fails
to convince.[10] The RFC allowed for light exertional work with postural limitations,

---

[9] ALJs are required to analyze whether opinion evidence is persuasive, based on: (1)
supportability; (2) consistency with the evidence; (3) relationship with the claimant [which
includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the
treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship];
(4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-
(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical
evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx.
19 (8th Cir. 2021); *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) An ALJ must give good
reasons for his findings about an opinion's persuasiveness. *Id.*

[10] A claimant's RFC represents the most he can do despite the combined effects of all of his
credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605,
614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by
competent medical evidence, the physical and mental activity that the claimant can perform in a
work setting, after giving appropriate consideration to all of his impairments. *Ostronski v.*

based upon Smith's back and knee pain. It did not include any mental limitations because mental impairments were non-severe, as discussed above. Conservative treatment like pain medications and steroid injections improved Smith's symptoms, so in that respect the RFC appropriately considered pain. The ALJ also considered Smith's ability to do daily activities, such as shopping in stores, handling personal care, and doing some yard work.[11] (Tr. at 263-266).  Additionally, no doctor placed any functional restrictions on Smith. The RFC fully incorporated all of Smith's credible limitations.[12]

## IV.  **Conclusion**:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err at Step Two, he properly considered the medical opinions, and the RFC incorporated Smith's limitations. The finding that Smith was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

---

*Chater,* 94 F.3d 413, 418 (8th Cir. 1996).

[11] Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

[12] An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

IT IS SO ORDERED this 2nd day of July, 2024.

_____
UNITED STATES MAGISTRATE JUDGE